UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ZEN-NOH GRAIN CORP. | CIVIL ACTION |
| VERSUS | NO: 09-282 |
| HAROLD LEGGETT, ET AL. | SECTION: R |

**ORDER AND REASONS**

Plaintiff Zen-Noh Grain Corp. filed this action to enjoin defendants Harold Leggett and Cheryl Nolan, officers of the Louisiana Department of Environmental Quality, from issuing a construction permit for a proposed pig iron plant in St. James Parish. Zen-Noh has filed a motion for preliminary injunction, R. Doc. 3, seeking to prevent the issuance of the permit until the defendants comply with certain procedural requirements of the Clean Air Act and the federally enforceable Louisiana State Implementation Plan. Leggett and Nolan, in turn, have filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. R. Doc. 9. Intervenor Nucor Steel Co., the company proposing to

-1-

build the pig iron plant, has filed a similar motion to dismiss. R. Doc. 21.

The crux of Zen-Noh's argument in this case is that it does not have access to all of the information submitted in support of Nucor's permit application, and that it is therefore unable to meaningfully participate in the permitting process. The Court is not unmindful of this concern. As the Court explained at oral argument, it is clear that everybody will be better off if the permitting process for this controversial project is conducted as openly and conscientiously as possible. In this regard, it should be noted that the Department promised the Court to make more modeling information available on its website and that the U.S. Environmental Protection Agency is maintaining an active role in the permitting process. It is the Court's hope that the Department of Environmental Quality and Nucor act in a manner to permit full disclosure.

That said, a federal court must always be cognizant of the limits on its authority to adjudicate disputes. When the case before a court involves the wrong parties or is filed too soon or too late, Article III of the Constitution prohibits the court from hearing the case and granting relief. It is on this basis that the Court concludes that Zen-Noh's action must be dismissed without prejudice. The permit in question has not yet been issued and may never be issued. Until the Department of

Environmental Quality makes a final decision in the matter, any action from this Court would be premature and potentially unnecessary.

There are further reasons why the Court cannot inject itself into the state permitting process. As counsel for Zen-Noh admitted at oral argument, and as the Court confirmed through its own research, there is not a single published case in which a federal court has used the Clean Air Act as a basis for interfering in a pending state administrative proceeding. In addition, Zen-Noh has struggled to articulate precisely how the defendants in this case will allegedly violate the Clean Air Act. In the absence of a clear legal basis for the lawsuit, and in light of the ongoing nature of the permitting process, the constitutionally proper course is for the Court to dismiss the case without prejudice. Zen-Noh will be able to come back to court once the Department of Environmental Quality has made a final decision and the dispute has become more concrete.

For the foregoing reasons, and for the reasons set forth below, the Court GRANTS the motions to dismiss.

## I. STATUTORY BACKGROUND

Congress enacted the Clean Air Act "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare." 42 U.S.C. § 7401(b)(1). The Act is

a comprehensive program for controlling and improving the nation's air quality. Under the Act, the Administrator of the Environmental Protection Agency identifies air pollutants that endanger the public health or welfare, determines what concentrations of those pollutants are safe, and codifies those safety determinations as National Ambient Air Quality Standards (NAAQS). *See* 42 U.S.C. §§ 7408, 7409. The Act then delegates to the states "primary responsibility for assuring air quality" within their respective boundaries, and requires each state to develop a State Implementation Plan "which will specify the manner in which [the NAAQS] will be achieved and maintained." 42 U.S.C. § 7410(a). Upon approval by the EPA, a State Implementation Plan becomes federally enforceable law. *Louisiana Envtl. Action Network v. EPA*, 382 F.3d 575, 579 (5th Cir. 2004); *Kentucky Res. Council, Inc. v. EPA*, 304 F. Supp. 2d 920, 923 (W.D. Ky. 2004); *Sweat v. Hull*, 200 F. Supp. 2d 1162, 1164 (D. Ariz. 2001).

Although the states "have 'wide discretion' in formulating their plans," *Alaska Dept. of Environmental Conservation v. EPA*, 540 U.S. 461, 470 (2004) (quoting *Union Elec. Co. v. EPA*, 427 U.S. 246, 250 (1976)), the Clean Air Act mandates that all State Implementation Plans include certain features. Of relevance here, the Act provides that each State Implementation Plan shall "meet the applicable requirements" of what is known as the

Prevention of Significant Deterioration of Air Quality (PSD) program. 42 U.S.C. § 7410(J); *see also* 42 U.S.C. § 7471. The PSD program, which applies to areas where the ambient level of air pollution already meets the NAAQS, *see* 42 U.S.C. § 7471, was "designed to ensure that the air quality in attainment areas or areas that are already 'clean' will not degrade." *Alaska Dept. of Environmental Conservation*, 540 U.S. at 470 (quoting BELDEN, CLEAN AIR ACT 43 (2001)). It prescribes certain substantive and procedural requirements that must be met before construction may begin on a new "major emitting facility." *See* 42 U.S.C. §§ 7475, 7479(1). All parties agree that the PSD requirements apply to the proposed pig iron plant at issue in this litigation.

## II. FACTUAL BACKGROUND

On May 12, 2008, intervenor Nucor Steel Co. applied to the Louisiana Department of Environmental Quality (LDEQ) for permits under the PSD program and another section of the Clean Air Act to construct and operate a pig iron plant in St. James Parish. The site for the proposed plant is "immediately adjacent to, and generally upwind of," a grain export facility operated by plaintiff Zen-Noh Grain Corp. Compl., R. Doc. 1 at ¶ 10. Zen-Noh alleges that "[e]missions of air pollutants from the proposed Pig Iron Plant could adversely affect Zen-Noh's employees and visitors; grain, equipment, and transport vessels located at Zen-

Noh's facility; and Zen-Noh's business opportunities." Id. ¶ 12.

As the Clean Air Act and Louisiana SIP require, Nucor submitted an air quality impact analysis to LDEQ at the time it applied for the PSD permit. Nucor submitted revised air quality impact analyses in August and September of 2008.

On October 15, 2008, LDEQ published notices in the Baton Rouge Advocate and the Lutcher News Examiner, requesting public comments on two draft permits for the pig iron facility. The notice stated that the proposed permits, applications, statement of basis, Environmental Assessment Statement, additional information submittals, and Emission Inventory Questionnaires were available for review at the LDEQ public records center in Baton Rouge and online at the LDEQ website. The notice also indicated that a public hearing would be held on November 20, 2008, at the St. James Parish courthouse, at which time "all interested persons will have an opportunity to comment." R. Doc. 1-3 at 2. Finally, the notice stated that LDEQ would accept written comments until November 24, 2008.

Before the hearing date, the U.S. Environmental Protection Agency and the U.S. Fish and Wildlife Service indicated that they believed Nucor's modeling failed to account for several potential sources of emissions. On November 17, 2008, Zen-Noh promised EPA that it would provide revised modeling to account for these concerns. It is not clear whether this modeling was ever

provided to LDEQ and, if so, whether it was made available to the public.

On November 6, 2008, Zen-Noh's air pollution modeling expert, Dr. Paolo Zannetti, wrote to LDEQ to request copies of the input files containing the data that was used to create Nucor's models. Dr. Zannetti renewed his request during an in-person meeting with defendant Cheryl Nolan on November 10, 2008. Dr. Zannetti received the relevant files for Nucor's original air quality impact analysis on November 20, 2008, and received the files for the two supplemental analyses on November 24 or 25, 2008. By that time, however, Zen-Noh contends that it was too late to analyze the data and submit comments before the close of the public comment period, which was November 24, 2008. Zen-Noh representatives attended the public hearing on November 20, 2008, but it does not appear that they submitted any comments at the time.

Zen-Noh initiated the present action on January 23, 2009. It alleges in its complaint that the LDEQ defendants will violate the procedural requirements of the Clean Air Act and Louisiana SIP if they issue a PSD permit to Nucor without allowing the public more time to comment on the proposed permits. The complaint seeks an injunction restraining the defendants from issuing the permit until they perform a number of acts set out in the complaint. Zen-Noh filed a motion for preliminary

injunction, which is now pending before the Court. Shortly after the complaint was served, the LDEQ defendants filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Nucor intervened in the action and filed a similar motion to dismiss. The Court heard oral argument on February 5, 2009, and now rules as follows.

**III. LEGAL STANDARD**

Rule 12(b)(1) requires dismissal if the court lacks jurisdiction over the subject matter of the plaintiff's claim. Motions submitted under Rule 12(b)(1) allow a party to challenge the court's subject matter jurisdiction based upon the allegations on the face of the complaint. *Lopez v. City of Dallas, Tex*, 2006 WL 1450520, *2 (N.D. Tex. 2006). In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Id.; see also Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). Furthermore, the plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When examining a factual challenge to

subject matter jurisdiction that does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). Accordingly, the Court may consider matters outside the pleadings, such as testimony and affidavits. *See Garcia*, 104 F.3d at 1261. A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not prevent the plaintiff from pursuing the claim in another forum. *See Hitt*, 561 F.2d at 608.

**IV. DISCUSSION**

Zen-Noh's principal claim appears to be that the defendants violated 42 U.S.C. §§ 7475(a) and (e), which set out procedures that must be followed before a "major emitting facility ... may be constructed." 42 U.S.C. § 7475(a). Subsection (a) provides that no such facility may be constructed unless, *inter alia*, a proposed permit "has been subject to a review in accordance with this section"; an ambient air quality analysis "has been conducted in accordance with regulations promulgated by the Administrator [of the EPA]"; a "public hearing has been held with opportunity for interested persons ... to appear and submit

written or oral presentations"; and a final permit has been issued in accordance with the requirements of the Act. *Id.* Subsection (e) further provides that the ambient air quality analysis may be conducted either by the state or by the permit applicant, and that "[t]he results of such analysis shall be available at the time of the public hearing on the application for such permit." *Id.* § 7475(e). The requirements set out in the Louisiana SIP are substantially similar. *See* LA. ADMIN. CODE § 33:III.509(Q).

Zen-Noh contends that the ambient air quality analysis submitted by Nucor was deficient in various ways and that the deficiencies prevented Zen-Noh from making meaningful comments on the proposed permit. Zen-Noh further argues that not all of the results of the ambient air quality analyses were available at the time of the public hearing. Finally, Zen-Noh claims that the defendants "have made it clear" through "their conduct" that they intend to issue final permits approving construction of the pig iron plant. Compl., R. Doc. 1 at ¶ 48. As a result, when the permit is issued, the defendants "will violate the purpose of the PSD amendments to the [Clean Air Act], the strict public participation requirements of 42 U.S.C. § 7475, and federally enforceable public participation requirements in the SIP." *Id.* at ¶ 54-55. Zen-Noh claims that it will be irreparably injured by these violations.

Nucor and the LDEQ defendants have challenged both the legal sufficiency of Zen-Noh's allegations and this Court's jurisdiction to adjudicate the claims.  As the parties' wide-ranging briefs suggest, the case is in an unusual posture and presents a number of difficult threshold questions.  Serious questions have been raised regarding the Court's authority to enforce the procedural requirements of the Clean Air Act outside of the Act's citizen suit provision.  Zen-Noh has struggled to identify a statutory provision or legal doctrine that grants it the right to bring its claim into federal court, and it has been unable to point to any decision in which a federal court has entertained a similar claim.[1]

The Court will pretermit these questions, however, because it is clear that the suit must be dismissed on the ground that Zen-Noh's claims are not yet ripe for adjudication.  Ripeness is a constitutional justiciability doctrine that "prevent[s] the courts, through premature adjudication, from entangling

---

[1] Zen-Noh cites *Southeast Legal Defense Group v. Adams*, 436 F. Supp. 891 (D. Or. 1977), which concerned the applicability of the civil rights fee-shifting statute, 42 U.S.C. § 1988.  The opinion alludes to an earlier decision in the same case wherein the court found that the defendants had violated the public hearing requirement of 23 U.S.C. § 128(a).  But it appears that the plaintiffs in that case had challenged a final decision of the Secretary of Transportation to approve a freeway construction proposal.  *See Adams*, 436 F. Supp. at 892 ("I therefore set aside the federal approval of the freeway corridor location.").  That fact pattern obviously bears little relation to the present case, in which Zen-Noh seeks federal court intervention *before* a final decision has been made.

themselves in abstract disagreements." *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)). The Supreme Court has expressly recognized that one purpose of the doctrine is "to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories*, 387 U.S. at 148-49.

In determining whether a claim is ripe for adjudication, courts must consider (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Id.* at 149. "[A] case is generally ripe if any remaining questions are purely legal ones." *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007) (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987)). On the other hand, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation and internal quotation marks omitted). Finally, with respect to review of administrative agency decisions, the general principle is that final agency action is ripe for review whereas interlocutory action is not. *See* 13B CHARLES A. WRIGHT ET AL.,

FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3532.6 (3d ed. 2008).

In this case, Zen-Noh's claim is not fit for review because it turns on hypothetical, contingent events, since LDEQ has not yet issued the permit. Zen-Noh's argument is that the LDEQ defendants will violate the Clean Air Act *if* they issue a PSD permit. *See* Compl., R. Doc. 1 at ¶ 54 ("By issuing the Final Permits ... Leggett and Nolan will violate the purpose of the PSD amendments to the [Clean Air Act], the strict public participation requirements of 42 U.S.C. § 7475, and federally enforceable public participation requirements in the SIP."). Although there is substantial authority indicating that "violations of the preconstruction permitting requirements occur at the time of *construction*," *CleanCOALition v. TXU Power*, 536 F.3d 469, 478 (5th Cir. 2008) (quoting *National Parks and Conservation Ass'n, Inc. v. Tennessee Valley Authority*, 502 F.3d 1316 (11th Cir. 2007)) (emphasis added); *see also* 42 U.S.C. § 7475(a) (providing that "[n]o major emitting facility ... may be *constructed* in any area to which this part applies unless" the enumerated procedures are followed) (emphasis added), the Court will assume for the sake of argument that a violation becomes actionable at the time the final permit is issued. Even still, Zen-Noh's claim is unripe for adjudication because that has not yet occurred either.

It is far from certain in this case that the injuries

described in Zen-Noh's complaint will come to pass. For example, LDEQ may decide to deny Nucor's application. The Clean Air Act and the Louisiana SIP both explicitly recognize that the LDEQ may deny PSD permit applications in appropriate cases. *See* 42 U.S.C. § 7475(c); LA. ADMIN. CODE § 33:III.509(Q)(2)(g). If the Nucor application is denied, Zen-Noh will not be injured and the basis for Zen-Noh's lawsuit will vanish. Similarly, LDEQ may correct the alleged procedural defects before a final decision is made. LDEQ may decide to re-open the public comment period or to hold another public hearing. *Cf. Matter of Shreveport Sanitary and Indus. Landfill*, 521 So.2d 710, 711-12 (La. Ct. App. 1988) (noting that LDEQ held two public hearings before issuing a permit for construction of a sanitary landfill). Indeed, the Environmental Protection Agency has specifically requested that the public comment period be extended, and counsel for LDEQ represented at oral argument that such an extension was "actively under consideration." Oral Arg. Tr., R. Doc. 49 at 35.

As the foregoing discussion makes clear, adjudication of the present controversy is "premature because the injury is speculative and may never occur." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). C*ompare Texas Midstream Gas Services, L.L.C. v. City of Grand Prairie*, 2008 WL 5000038 at *3 (N.D. Tex. Nov. 25, 2008) (finding that plaintiff's challenge to permitting procedures was ripe because the

plaintiff's claims "do not depend on whether or when [a permit] ultimately is granted or denied"). Cases adjudicated on an incomplete record tend to be difficult to resolve because the court must fill in key factual gaps with its own hypotheses as to how certain contingencies might play out. In this case, for example, further development of the factual record will permit a reviewing court to understand precisely what procedural violations are alleged and how those violations affect Zen-Noh's legal rights. Without such development, the Court is left to guess how LDEQ's future actions might affect the legal analysis.

As Nucor has pointed out, this case bears many similarities to the Fifth Circuit case *Monk v. Huston*, 340 F.3d 279 (5th Cir. 2003). The plaintiffs in that case sought to enjoin officials of the Texas Commission on Environmental Quality (TCEQ) from considering a permit application for a proposed landfill. The plaintiffs claimed that the permitting procedures employed by the TCEQ violated the Due Process Clause of the Fourteenth Amendment. The district court entered a preliminary injunction, but the Fifth Circuit vacated the injunction on appeal. According to the Fifth Circuit, the plaintiffs

> have not suffered any deprivation [under the Due Process Clause], because the TCEQ permitting process has not yet run its course. The application may or may not be granted, and thus plaintiffs may or may not be harmed. Therefore, until the TCEQ issues the permit, this dispute remains "abstract and hypothetical" and thus unripe for judicial review.

*Monk*, 340 F.3d at 283. Here too, Nucor's application "may or may

-15-

not be granted," and Zen-Noh "may or may not be harmed." The strong implication of *Monk* is that Zen-Noh's claims are unripe for review.

Turning now to the second component of the ripeness inquiry, the Court finds that Zen-Noh will suffer no hardship if review of its claim is deferred. If the permit application is denied or if LDEQ corrects the alleged defects, Zen-Noh will suffer no injury at all, let alone a hardship. If the permit is issued, Zen-Noh will be able to seek review of the permitting procedures in state court, *see* LA. REV. STAT. §§ 30:2050.21, 49:964(G), and may be able to renew its claim in federal court under the Clean Air Act's citizen suit provision, *see CleanCOALition*, 536 F.3d at 477 (deferring the question whether a plaintiff may bring a citizen suit alleging violations of the preconstruction permit requirements). Indeed, if Zen-Noh can demonstrate that the present action was validly initiated, Zen-Noh is free to invoke the same ground for suit in a subsequent complaint.

This is not a case in which the challenged action has a "direct effect on the day-to-day business" of the plaintiff. *Texas v. United States*, 523 U.S. 296, 301 (1998). Unlike a case in which the plaintiff is threatened with prosecution or other sanctions, Zen-Noh is not the object of LDEQ's action. It is a member of the public whose right to participate in the permitting process is no greater than any other member of the public.

Furthermore, any actual injury to Zen-Noh's business will not occur until after the pig iron plant has been approved and constructed, which may be several years from now. The only true difficulty that Zen-Noh faces at the moment is the possibility that it will have to overcome a more deferential standard of review once LDEQ has made a final decision. *See* LA. REV. STAT. § 49:964 (providing that a reviewing court "may reverse or modify the [agency's] decision if substantial rights of the appellant have been prejudiced"). But this is an intentional feature of the system of administrative review, not a hardship in the sense that word is used in the Supreme Court's decisions. *Cf. National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 809-12 (2003) (finding no hardship after noting that the challenged provision "does not command anyone to do anything or to refrain from doing anything; it does not grant, withhold, or modify any formal legal license, power, or authority; it does not subject anyone to any civil or criminal liability; and it creates no legal rights or obligations") (quoting *Ohio Forestry Assn., Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)) (internal brackets omitted); 13B WRIGHT ET AL., *supra*, § 3532.4 ("The most important aspect of the hardship determination is a clear recognition that a decision of legal relationships often should be available before irrevocable commitments are made."). Deferring review of LDEQ's procedures will not create any additional hardship for

Zen-Noh.

**V. CONCLUSION**

For the foregoing reasons, the Court concludes that Zen-Noh's claim is not ripe for review. The defendants' motions to dismiss are GRANTED, and Zen-Noh's complaint is DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this <u>7th</u> day of April, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE